UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JASPEL SINGH BATRA, et al.,

                         Plaintiffs,

             -against-

STATE BANK OF INDIA,

                       Defendant,

------------------------------------------------------------ X

:
:
:
:
:
:
:
:
:
:
:

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 05/25/2016 |

15 Civ. 2678 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

      This action arises from allegations that Defendant State Bank of India ("SBI") defamed Plaintiffs Jaspal Singh Batra, Sanmukh Batra and Noble Brothers Impex Ltd. ("Noble"). Defendant SBI moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs' claims are time barred, Defendant's motion is granted.

## BACKGROUND

      The facts below are taken from Plaintiff's amended complaint, attached exhibits and the submissions of the parties.

### The Parties

      Plaintiffs Jaspal Singh Batra and Sanmukh Batra were, at the times relevant to this action, directors of Plaintiff Noble. The Batras are citizens and residents of India, and Noble is a public limited company incorporated in India and engaged in the business of manufacturing and selling leather garments.

      SBI is an Indian banking corporation principally owned by the government of India and headquartered in Mumbai, India. SBI maintains a branch in New York through which it regularly transacts business.

**The Naazo Line of Credit**

In 1993 SBI, through its New York branch office ("SBI New York"), provided a line of credit for $500,000 -- later increased to $3,000,000 -- to Naazo International, Inc. ("Naazo"), a New York corporation located in New York, New York.  At the time, Naazo was a wholesale customer of Noble.  Naazo's principal owner, S.S. Gulati, had been an employee of Noble in India, serving as a Noble director for a short period.

In May 1995, SBI contacted Noble's bank, State Bank of Bikaner and Jaifur ("SBBJ"), about Noble's financial integrity in connection with the Naazo line of credit.  SBBJ is an independent associate of SBI and is owned by the Indian government.  In response to SBI's inquiries, SBBJ wrote that Noble was a highly valued client of large means and sound financial standing, that Noble was enjoying high reputation and respectability in the market and that SBBJ's dealings with Noble always had been satisfactory.

**Naazo's Default and SBI's Attempts to Collect**

In or about 1995, Naazo failed to pay interest due on its line of credit.  Throughout 1996, SBI via its New York branch office requested assistance from SBBJ in collecting its debt from Naazo.  SBI (in India) told SBBJ that Jaspal Batra (affiliated with Noble) was the brother-in-law of Gulati, Naazo's owner, and that SBBJ could, through Jaspal Batra, exert influence over Gulati to pay Naazo's debt to SBI.  SBBJ replied that its investigation of Noble did not indicate that Noble had any non-business transaction with Naazo, and further that Noble had only a vendor-vendee relationship with Naazo.  Stating that it was attempting to trace money that SBI paid to Naazo that SBI suspected was siphoned to Noble, SBI New York requested that SBBJ provide SBI with the names of Noble's customers in the United States and Russia from January 1995 to June 1996.  In a letter dated July 24, 1996, SBBJ declined, citing client confidentiality.

**SBI's 1996 Action**

The New York Secretary of State dissolved Naazo in September 1995 for failure to pay corporate franchise taxes.  In October 1996, SBI sued Naazo in New York state court for failure to pay its debt.  In November 1996, SBI amended its action against Naazo to add other entities as defendants, including Noble.  SBI alleged that these entities, including Noble, had sufficient ownership or other interest in Naazo that they could be held liable for Naazo's debt.  SBI also alleged that Noble and the other defendants conspired to defraud SBI via the Naazo loans and pleaded claims for fraudulent conveyance, tortious interference with contract and violation of the Racketeer Influenced and Corrupt Organizations Act.  18 U.S.C. § 1962 (2010); 18 U.S.C. § 1964 (2010).

On June 9, 1999, Noble discharged its counsel.  This resulted in Noble's default because a corporation cannot proceed pro se.  *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993) ("[T]he law permits corporations . . . and other artificial entities . . . to appear in federal courts only though licensed counsel.").  Default judgment was entered in favor of SBI against Noble in the amount of $8,479,016.08 as a result of RICO's treble damages provision.

**SBI's Communications Regarding the 1996 Action**

In a letter dated November 14, 1996, SBI New York informed senior bank managers who oversaw both SBI and SBBJ that it had commenced suit against Naazo and Noble, among others, and that SBI might seek to subpoena SBBJ's records in connection with the suit.  In another letter to SBBJ dated December 26, 1996, SBI New York stated that it believed that the Batras, via Noble and other entities, had defrauded SBI of its loan to Naazo.  SBI incorrectly described the new action as a criminal suit that had been filed in New York against Noble, charging Noble with

fraudulent inducement, fraudulent conveyance and violation of RICO.  The First Amended Complaint ("FAC") alleges that the reference to a criminal suit is an intentional misrepresentation of SBI's 1996 civil action.

In a letter dated February 4, 1997, SBI New York again requested that SBBJ provide information about Noble's customers in the United States and Russia.  SBBJ refused again, citing client confidentiality.  Throughout 1997, SBI (in India) inquired about SBBJ's dealings with Noble repeatedly, including requesting details of any allegations made by SBBJ to Indian authorities regarding Noble.  SBBJ stated that it made no such allegations and maintained that its investigation revealed no non-business transactions by Noble.  In December 1997, SBI in India requested that SBBJ re-audit Noble's account and furnish the previously requested information to SBI's New York branch office, again citing the existence of a criminal complaint for RICO violations in the United States.  The FAC alleges that the reference to a criminal complaint is an intentional misrepresentation of SBI's 1996 civil action.

SBI New York and India repeatedly attempted to persuade SBBJ to furnish the requested information throughout 1998 and 1999, often referencing the "criminal" action against Noble in New York.  SBBJ refused.  In a letter dated March 3, 1999, SBI New York, through its counsel in New York, asked SBBJ to allow SBI to inspect SBBJ's files relating to Noble.

**The Noble Collateral**

The attorney's letter dated March 3, 1999, further requested that SBBJ refrain from releasing any property pledged to SBBJ by Noble or its directors, the Batras.  In a letter dated May 24, 1999, SBBJ acknowledged internally that it would not release the deeds to real property furnished to SBBJ by Noble even if Noble repaid the loans or advances for which that collateral was pledged.  SBBJ did not inform SBI of this decision, as SBI continued to request that SBBJ

4

refrain from releasing Noble's collateral in letters from SBI and from counsel for its New York branch office.

**SBI's Communications Regarding Nobel's Alleged FERA Violations**

SBI New York stated in letters dated June 25 and July 26, 1999, from its New York counsel to SBBJ that Jaspal Batra's testimony indicated that Nobel and its directors had violated the Indian Foreign Exchange Regulation Act ("FERA"), a provision of Indian law, and that the related proceeds had been funneled through SBBJ.

**Noble's and SBI's Indian Actions**

In the summer of 1999, Noble petitioned the Delhi High Court in India for a writ forcing SBBJ to release Noble's collateral.  On October 16, 2006, this action was dismissed for failure to deposit costs imposed on the plaintiffs.

In 2001, SBI brought proceedings before India's Debt Recovery Tribunal ("DRT") seeking to enforce the New York default judgment against Noble.  In SBI's action before the DRT, the DRT granted SBBJ temporary custody of Noble's collateral pending its ultimate resolution of SBI's action.  The DRT action is still pending.

**SBI's Concealment of Its Communications**

In 2005, Plaintiffs began requesting documents from SBI pursuant to India's Right to Information Act ("RIT"), which was enacted in 2005 and applies to Indian state entities such as SBI.  Plaintiffs sought information regarding SBBJ's refusal to release Noble's collateral.  SBI's RIT officer denied virtually every document request, citing the age of the requested information and asserting that the release of many communications between SBI and SBBJ would constitute an invasion of privacy.  Plaintiffs appealed these denials, and India's Central Information Commission ("CIC") ordered SBI to release the requested documents.  In response, SBI produced

only documents created in 2010, 2011 and 2012 and omitted documents from the period 1996 to 1999.  Plaintiffs appealed to the CIC, which ordered SBI to produce these documents.  SBI informed Plaintiffs that they could inspect the documents on April 4, 2013.  Jaspal Batra inspected the documents on that date and again found missing files and documents, including the entirety of the late 1990s communications between SBI and SBBJ.  SBI supplemented with a production of 1,192 pages of new documents on April 13, 2013.  In January 2014, Plaintiffs sought a writ of mandamus from the High Court of Delhi to compel SBI to comply with CIC's order.  Plaintiffs withdrew their petition after assembling the relevant communications from documents SBI had previously produced.

**The Claims in This Case**

Plaintiffs allege that SBI committed commercial defamation and commercial disparagement.  The FAC alleges that, by referring to Noble and its directors as defendants in a criminal action in New York, and by stating that Noble and its directors were in violation of FERA, SBI maliciously defamed Plaintiffs to SBBJ with the intent of depriving Plaintiffs of the collateral they furnished to SBBJ.  The FAC further alleges that, as a result, Plaintiffs have been, and continue to be, deprived of the deeds still in the possession of SBBJ and are therefore without collateral to obtain financing to operate Noble's business, which has been destroyed.

**STANDARD**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the Court accepts as true all well pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Littlejohn v. City of New York,* 795 F.3d 297, 306 (2d Cir. 2015).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Where the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq., provides the basis for a motion to dismiss under Rule 12(b)(1), "a court may look beyond the pleadings, to the evidence properly before it, and assess the substance of the allegations to determine whether one of the exceptions to FSIA's general exclusion over foreign sovereigns applies."  *Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany*, 615 F.3d 97, 105 (2d Cir. 2010) (internal citations omitted).  "The district court should make this determination recognizing that a motion to dismiss based on an assertion of sovereign immunity has particular significance because sovereign immunity under the FSIA is immunity from suit, not just from liability."  *Id.* (internal citations omitted).

## DISCUSSION

Although SBI's allegedly defamatory statements to SBBJ fall within the commercial activity exception to the FSIA, and SBI's fraudulent concealment of the statements tolls the applicable statute of limitations, that tolling ceased on April 13, 2013.  The statute of limitations for commercial defamation and commercial disparagement is one year, which ran on April 13, 2014.  N.Y. C.P.L.R. § 215(3) (McKinney 2006).  Plaintiffs filed this action on March 24, 2015.  Plaintiffs' claims are time barred, and Plaintiffs' action is dismissed under Federal Rule of Civil Procedure 12(b)(6).

### I.      The Foreign Sovereign Immunities Act

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quoting *Argentine*

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)).  The FSIA immunizes

foreign states and their agencies or instrumentalities from suit except in certain specified

circumstances.  28 U.S.C. § 1604.

### A.    SBI Is a Foreign Instrumentality Under FSIA

Under the FSIA, "foreign state" includes an "agency or instrumentality of a foreign state."

*See* 28 U.S.C. § 1603(b).  The latter is any entity separate from the state itself that is either an

organ of the state or majority-owned by the state.  *See id.*  SBI is owned by the state of India.  The

parties do not dispute that SBI is a foreign agency or instrumentality under the FSIA and

therefore is "presumptively immune from the jurisdiction of United States courts[,] unless a

specified exception applies."  *Nelson*, 507 U.S. at 355.

### B.    The Commercial Activity Exception Applies

SBI's allegedly defamatory statements fall within the commercial activity exception to

sovereign immunity because they were part of SBI's efforts to collect on a debt owed by one of

its borrowers, Naazo.  *See* 28 U.S.C. § 1605(a)(2).  Subject matter jurisdiction therefore exists

here.  *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106

(2d Cir. 2016) ("Federal courts have subject-matter jurisdiction over an action against a foreign

state if, and only if, one of those exceptions applies.").

The commercial activity exception is "[t]he single most important exception to foreign

state immunity under the FSIA."  *Atlantica Holdings*, 813 F.3d at 106 (internal citation omitted).

The exception permits suits where "the action is based [1] upon a commercial activity carried on

in the United States by the foreign state; or [2] upon an act performed in the United States in

connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside

the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

"**Commercial Activity**."  The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  This provision clarifies that "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'"  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (emphasis in original).

SBI's actions at issue here are communications with a second bank to obtain cooperation in collecting on a line of credit.  These are no different from the type of actions a private commercial bank -- i.e., a non-sovereign bank -- might take to conduct its business in seeking to collect on an outstanding debt.  SBI extended a line of credit to Naazo and, when Naazo defaulted on its loan, SBI sought relief in New York state court.  SBI, on its own and through counsel, sought information and assistance from another financial institution to attempt to recover the money owed to SBI by Naazo.  SBI did not take any action that a non-sovereign bank would not or could not take in the course of making the loan to Naazo or attempting to recover its money.  These activities are commercial in nature.

"**Carried on in the United States**."  SBI's actions were "carried on in the United States" within the meaning of FSIA.  The FSIA states, "[a] 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States."  28 U.S.C. § 1603(e).  The initial loan to Naazo was

made by SBI's New York branch office to Naazo, a New York corporation operating in New York City.  SBI's underlying conduct was conducted on behalf of its New York branch office, either by employees located in that office or the New York attorneys for that office.  To the extent that allegedly defamatory statements were made out of India, they related back to SBI's actions in the United States -- SBI's loan and collection activity, which took place in New York.

"**Based Upon**."  The FSIA's term "based upon," in requiring that the action be based upon commercial activity in the United States, is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."  *Nelson*, 507 U.S. at 357.  The Court of Appeals and courts in this District have construed this language to require "that a significant nexus exist" between the tortious act and the foreign sovereign's commercial activity.  *NYSA-ILA Pension Trust Fund By & Through Bowers v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993); *see Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 389-90 (S.D.N.Y. 2006) (holding that defamation claim lacked sufficient nexus to commercial activity of photographing royal family); *Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 293 (S.D.N.Y. 2001) ("[T]here is little doubt that, at a minimum, there must be a 'significant nexus' between the commercial activity at issue and the causes of action." (quoting *NYSA-ILA*, 7 F.3d at 38))).  Here, the action easily satisfies this requirement as it alleges defamatory statements that are themselves the "commercial activity in the United States."

"**The Exception within the Exception**."  Defendant's argument that the FSIA categorically bars defamation claims is unavailing.  Defendant relies on 28 U.S.C. § 1605(a)(5), which provides that foreign states are not immune from suit in cases

> *not otherwise encompassed* in paragraph (2) above [i.e., 28 U.S.C. § 1605(a)(2), the commercial activity exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property,

10

occurring in the United States and caused by the tortious act or omission of that foreign state . . . except this paragraph shall not apply to . . . any claim arising out of malicious prosecution, abuse of process, *libel, slander, misrepresentation*, deceit, or interference with contract rights.

*Id.* (emphasis added).  Defendant asserts that this provision categorically bars defamation claims against foreign sovereigns.

The plain language of the provision is contrary to Defendant's interpretation.  This exception to foreign sovereign immunity applies to certain tortious acts, except libel, slander and other enumerated causes of action, expressly as an alternative to the commercial activity exception.  The beginning of the provision -- "not otherwise encompassed in paragraph (2) above" -- expressly states that the exception is an alternative to paragraph (2), which is the commercial activity exception.  *See Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984) (statutory language "suggests that the commercial activity exception to jurisdictional immunity under [paragraph] (2) and the tort exception under (5) are mutually exclusive.").

The legislative history, which repeatedly refers to the § 1605(a)(5) exception category as "noncommercial torts," is also contrary to Defendant's interpretation.  *See* H.R. REP. No. 94-1487 (1976), at 20-21; *accord Argentine Republic*, 488 U.S. at 439 (referring to 1605(a)(5) as the "exception for noncommercial torts").  This exception based on noncommercial torts, including its exception for certain causes of action, is distinct and separate from the exception for commercial activity, which contains no similar limitation.

Although the Court of Appeals for the Second Circuit has yet to adjudicate the question, Judge Lynch in *Leutwyler*, 184 F. Supp. 2d at 295 reached the same conclusion -- that the carve out for libel and slander in § 1605(a)(5) does not affect or limit the commercial activity exception.  The interpretation that § 1605(a)(5) forecloses bringing defamation claims under the

commercial activity exception "is difficult to square with the literal language of the FSIA."  184
F. Supp. 2d at 294.  *Accord Fagan,* 438 F. Supp. 2d at 389 ("I find, as did Judge Lynch
in *Leutwyler*, that this reasoning, while persuasive, is "difficult to square with the literal language
of FSIA."); *contra Bryks v. Canadian Broadcasting Corp.*, 906 F. Supp. 204, 209 (S.D.N.Y.
1995) ("I find it anomalous to read the FSIA to permit defamation claims under the commercial
activity exception.").

Those appellate courts that have addressed the question have uniformly held that 28
U.S.C. § 1605(a)(5)'s exclusion of libel, slander and other specified causes of action does not
similarly limit adjudicable claims based on a foreign sovereign's commercial activity.  *See El-
Hadad v. United Arab Emirates*, 216 F.3d 29, 35 (D.C. Cir. 2000); *Southway v. Central Bank of
Nigeria*, 198 F.3d 1210, 1219 (10th Cir. 1999); *Export Grp. v. Reef Indus., Inc.*, 54 F.3d 1466,
1473-77 (9th Cir. 1995).  Where, as here, a tort claim possesses a "clear and strong connection to
commercial activity," it is permitted under 28 U.S.C. § 1604(a)(2).  *See Leutwyler*, 184 F. Supp.
2d at 295.  SBI's allegedly defamatory statements to SBBJ fall within the commercial activity
exception to the FSIA, and the statute does not immunize SBI from suit in this action.

## II.     Statute of Limitations

Under New York law, the statute of limitations for defamation and for disparagement is
one year.  N.Y. C.P.L.R. § 215(3).  The last statement alleged to be made to SBBJ by SBI was
dated July 26, 1999.  Plaintiffs filed this action on March 24, 2015.  Although SBI's fraudulent
concealment of its statements to SBBJ equitably tolled the statute of limitations, that tolling
extended only until April 13, 2013.  As a result, the statute of limitations on this action has run.

## A.    SBI's Fraudulent Concealment of Its Statements to SBBJ Equitably Tolled the Statute of Limitations Until April 13, 2013

Under New York law,[1] the statute of limitations on a claim for defamation begins to run when the statement is made, not when it is discovered by the plaintiff.  *See Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) ("New York's single publication rule states that a defamation claim accrues at publication."); *Melious v. Besignano*, 4 N.Y.S.3d 228, 229 (2d Dep't 2015) ("A cause of action alleging defamation . . . accrues at the time the alleged statements are originally uttered.").  However, "the statute of limitations is tolled where a plaintiff shows that a defendant committed fraudulent acts intended to conceal its misconduct and that the plaintiff's ignorance of the concealed misconduct was not a product of its own lack of reasonable diligence."  *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14 Civ. 7126, 2016 WL 1241533, at *12 (S.D.N.Y. Mar. 28, 2016).

The FAC sufficiently alleges that SBI fraudulently concealed facts material to Plaintiffs' claims against SBI.  The FAC alleges that SBI withheld information that it was obligated to release to Plaintiffs under the RIT and by order of the CIC.  The information withheld by SBI is the basis of Plaintiffs' action -- the allegedly defamatory statements made by SBI in its communications with SBBJ.  Drawing all inferences in favor of Plaintiffs, the statute of limitations on Plaintiffs' defamation claim was equitably tolled until SBI made the information in question available to Plaintiffs.  As alleged in the FAC, SBI made the documents related to its communications regarding Noble with SBBJ available to Plaintiffs on April 13, 2013.

## B.    The Statute of Limitations Has Run

---

[1] The majority of the allegedly defamatory statements were made in New York.  Also, the parties' memoranda of law assume that New York law controls this issue, "and such implied consent . . . is sufficient to establish choice of law."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (internal quotation and citation omitted).

The statute of limitations on Plaintiffs' defamation claims was equitably tolled until April 13, 2014. On that date, the one year statute of limitations established by N.Y. C.P.L.R. § 215(3) began to run. The statute of limitations therefore expired on April 13, 2014. Plaintiffs commenced this action on April 7, 2015. Plaintiffs' action is dismissed as time barred pursuant to Federal Rule of Civil Procedure 12(b)(6). *See La Russo v. St. George's University School of Medicine*, 747 F.3d 90, 95 (2d Cir. 2014) (affirming dismissal of action as time barred under Federal Rule of Civil Procedure 12(b)(6)).

Plaintiffs' argument that SBI's failure to notify SBBJ that SBI's statements regarding Noble's "criminality" and "money laundering" were false constitutes republication, which extends the statute of limitations seemingly indefinitely, is unavailing. Plaintiffs cite no authority for this proposition. A principle that failure to correct a defamatory statement constitutes republication warranting an indefinite tolling of the statute of limitations would completely undermine the N.Y. C.P.L.R. § 215(3)'s underlying principles of finality and certainty. *See Banos v. Rhea*, 25 N.Y.3d 266, 279 (2015) ("However, statutes of limitations embody an important public policy of providing finality . . . .").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED. The Clerk of Court is respectfully directed to close the motion at Docket No. 27 and to close the case.

Dated: May 25, 2016
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

14